**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JABZ CHANDLER II LLC and LEN HAYKO PROMOTIONS, LLC, individually and on behalf of all others similarly situated, | **CLASS ACTION COMPLAINT** |
| *Plaintiffs*, | **JURY TRIAL DEMANDED** |
| v. | |
| PHILADELPHIA INSURANCE COMPANIES, PHILADELPHIA CONSOLIDATED HOLDING CORP., PHILADELPHIA INDEMNITY INSURANCE COMPANY, and MAGUIRE INSURANCE AGENCY INC., | |
| *Defendants*. | |

Plaintiffs, JABZ Chandler II LLC ("JABZ") and Len Hayko Promotions, LLC ("Hayko") (hereinafter collectively, "Plaintiffs"), bring this Class Action Complaint on behalf of themselves and all others similarly situated, alleging relief against Defendants, Philadelphia Insurance Companies, Philadelphia Consolidated Holding Corp., Philadelphia Indemnity Insurance Company, and Philadelphia Insurance Company Maguire Insurance Agency Inc. ("Defendants"), and aver as follows:

## NATURE OF THE CASE

1.      This is a class action seeking declaratory relief arising from Plaintiffs' and members of the class' contracts of insurance with the Defendants.

2.      In light of the global coronavirus disease 2019 ("COVID-19") pandemic and state and local government orders ("Civil Authority Orders") mandating that all non-essential in-store businesses must shut down.  Plaintiffs' and members of the class' businesses have suffered business loss.

1

3. Plaintiffs' and members of the class' insurance policies ("Policies") provide coverage for all non-excluded business losses, and thus provide coverage here.

4. As a result, Plaintiffs and members of the class are entitled to declaratory relief that their businesses are covered for all business losses that have been incurred in an amount greater than $150,000.00.

## JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because (1) this matter exceeds $5,000,000, (2) the action is a class action, (3) there are members of the class diverse from Defendants, and (4) there are more than 100 class members.

6. This Court has personal jurisdiction over Defendants because their headquarters and principal places of business are located within the Commonwealth of Pennsylvania. Accordingly, Defendants are subject to general personal jurisdiction of this Court.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents of this District, because Defendants transact business in this District, and because a substantial part of the events giving rise to this claim, including drafting of Defendants' insurance policy language, occurred in this District.

## PARTIES

8. Plaintiff JABZ is a fitness center which operates at 941 W. Elliot Road, Unit 7, Chandler, Arizona 85225. Plaintiff JABZ is owned by Kimberly White, who is a citizen of Arizona.  Plaintiff JABZ is also owned by ZGrowth Jabx LLC, which is owned by ZGrowth Capital Fund LP, which is a Delaware corporation.

9. Plaintiff Hayko is a fitness center which operates at 13610 N. Scottsdale Road, Scottsdale, Arizona 48038. Hayko is owned by Kimberly White and ZGrowth Jabx LLC. Kimberly White and ZGrowth Jabx LLC are citizens of Arizona and Delaware, respectively.

10.     At all relevant times, Defendants Philadelphia Insurance Companies, Philadelphia Consolidated Holding Corp., Philadelphia Indemnity Insurance Company, Philadelphia Insurance Company, and Maguire Insurance Agency, Inc., issued a business interruption policy to Plaintiffs for their properties.

11.     Upon information and belief, Philadelphia Consolidated Holding Corp., Philadelphia Indemnity Insurance Company, Philadelphia Insurance Company, and Maguire Insurance Agency, Inc. are all members of Philadelphia Insurance Companies.

12.     Defendant Philadelphia Consolidated Holding Corp. ("Philadelphia Consolidated") is an insurance company whose headquarters and principal place of business are in Pennsylvania.

13.     Defendant Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") is an insurance company whose headquarters and principal place of business are in Pennsylvania.

14.     Defendant Philadelphia Insurance Company ("Philadelphia Insurance") is an insurance company whose headquarters and principal place of business are in Pennsylvania.

15.     Defendant Maguire Insurance Agency, Inc. ("Maguire") is an insurance company whose headquarters and principal place of business are in Pennsylvania.

16.     At all relevant times, Defendants issued an insurance policy to Plaintiff JABZ (policy number PHPK 2099173) that includes coverage for business interruption losses incurred by Plaintiff from February 10, 2020 through February 10, 2021. *See* Declaration, attached hereto as Exhibit 1.

17.     At all relevant times Defendants issued an insurance policy to Plaintiff Hayko (policy number PHPK2122149) that includes coverage for business interruption losses incurred by Plaintiff from April 10, 2020 through April 20, 2021.  This policy renewed an existing policy that was already in place.  *See* Declaration, attached hereto as Exhibit. 2.

18.     The policies for JABZ and Hayko, currently in full effect, include coverage for, among other things, business personal property, business income, special business income, and professional business income.

19.     Plaintiffs submitted a claim for a date of loss pursuant to their policies, seeking coverage under their policies. Defendants rejected Plaintiffs' business loss and business interruption claims and other claims, contending, *inter alia,* that Plaintiffs did not suffer physical damage to their property directly and stating other reasons why Plaintiffs are not purportedly entitled to coverage for the losses and damages claimed.

20.     The claims asserted by Plaintiffs JABZ and Hayko are for similar business losses for the closure of their fitness centers. The rejection of their losses by Defendants were rejected because there was no physical damage to the property and the Virus Exclusion.  Defendants' denials are in violation of their policies.  The Virus Exclusion does not exclude this pandemic and Plaintiffs have suffered physical damage.

## FACTUAL BACKGROUND

### I.     Insurance Coverage

21.     Plaintiffs faithfully paid policy premiums to Defendants, specifically to provide, among other things, additional coverages in the event of business interruption or closures by order of Civil Authority and for business loss for property damage.

22.     The terms the Policies explicitly provide for insurance coverage for actual loss of business income Plaintiffs sustain, along with any actual, necessary and reasonable extra expenses incurred, when access to the Insureds' Properties is specifically prohibited by order of civil authority.

23.     The Policies are all-risk policies, insofar as they provide that covered causes of loss under the policies provide coverage for all covered losses, including but not limited to direct

physical loss and/or direct physical damage, unless a loss is specifically excluded or limited in the Policies.

24.     The Policies also provides coverage for damages resulting from business interruption when there is property damage.

25.     The Policies' virus or bacteria exclusion does not apply to the closure of Plaintiffs' businesses as a result of an order issued by a Civil Authority due to the COVID-19 pandemic.

26.     Nonetheless, based on information and belief, Defendants have accepted Plaintiffs' policy premiums with no intention of providing coverage for business income losses that result from the orders of any Civil Authority that the business be shutdown, or any related property damage.

## II.     The COVID-19 Pandemic

27.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. It is clear that contamination of the Insured Properties would be a direct physical loss requiring remediation to clean the surfaces of the fitness centers.

28.     On information and belief, the virus that causes COVID-19 remains stable and transmittable: in airborne aerosols for up to three hours; on copper for up to four hours; on cardboard for up to 24 hours; and on plastic and stainless steel for up to two to three days. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces     (last visited April 9, 2020).

29.     The CDC had during the relevant time period issued a guidance recommending that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

30.     The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

31.     China, Italy, France, and Spain have implemented procedures requiring the cleaning and disinfection of public areas prior to allowing them to re-open publicly due to the COVID-19 contamination.

## III.   Civil Authority for Arizona

32.     On March 11, 2020, the Governor of Arizona declared a Public Health Emergency related to the COVID-19 pandemic.

33.     On March 15, 2020, the Governor of Arizona closed all public schools.

34.     On March 17, 2020, the Governor of Arizona declared that all gatherings of more than 10 people were discouraged.

35.     On April 1, 2020, the Governor of Arizona issued the closure of non-essential businesses, including businesses like Plaintiffs. This Order was in effect until at least April 30, 2020.

36.     On April 29, 2020, the Governor of Arizona ordered that businesses could reopen if safety protocols are followed.  These protocols are very difficult for a fitness center to achieve.

## IV.   Authority

37.     As a direct consequence of the stay-at-home orders for public safety issued by the State of Arizona Civil Authorities, Plaintiffs' fitness centers have been unable to operate. Accordingly, Plaintiffs have submitted a claim to their insurance carrier related to such losses.

38.     Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiffs.

REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid*. You have people. I speak mostly to the restaurateurs, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

*See* https://youtu.be/cMeG5C9TjU (last visited on April 17, 2020) (emphasis added).

39.     The President is articulating a few core points:

a.  Business interruption is a common type of insurance.

b.  Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

c.  The COVID-19 pandemic should be covered unless there is a specific exclusion for pandemics.

d.  If insurers deny business loss coverage due to the COVID-19 pandemic, they would be acting in bad faith.

40.     The Civil Authority Orders and proclamations referenced herein, as they relate to the closure of all "non-life- sustaining businesses," evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true for businesses such as Plaintiffs', where customer or client interaction and personal contact results in a heightened risk of the property becoming contaminated.

**A.  Other States**

41.     The shut-down Civil Authority Orders issued by Arizona authorities covering Arizona non-essential businesses are similar to Civil Authority Orders that have been issued nationwide by state and local civil authorities during the course of the class period. *See* https://www.wsj.com/articles/a-state-by-state-guide-to-coronavirus-lockdowns-11584749351.

1.  *Alabama*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are closed to the public, including entertainment venues, fitness centers, salons, nail parlors and certain retailers.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Beaches closed.

2.  *Alaska*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Travelers from out of state must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Unless locally restricted, open with social distancing.

3. *Arkansas*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** 10-person limit; does not apply to unenclosed outdoor spaces or places of worship.

- **Businesses:** Gym and entertainment venues are closed. Hotels, motels and vacation rentals are restricted to authorized guests.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks remain operational during the daytime.

4. *California*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings in a single room or place are prohibited. Visitation to hospitals, nursing homes and other residential care facilities is restricted.

- **Businesses:** Nonessential businesses are closed.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Some parks are fully closed. Local jurisdictions have closed some beaches.

5. *Colorado*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Public and private gatherings of any number are prohibited with limited exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks remain open, but playgrounds, picnic areas and campgrounds are closed.

6. *Connecticut*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit for social and recreational gatherings; 50-person limit for religious services.

- **Businesses:** Nonessential businesses must suspend all in-person operations.

- **Quarantines:** No statewide directive. Out-of-state visitors are strongly urged to self-quarantine.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Trails and grounds of state parks and forests are open with social distancing.

7. *Delaware*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Visitors from out of state who are not just passing through must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Beaches are closed except for exercise or dog walking. State parks remain open with restricted activity.

8. *Florida*

- **Travel outside home:** Senior citizens and those with significant medical conditions may not leave home unless for essential needs or to go to an essential job.

- **Gatherings:** No social gatherings in a public space with religious exemptions.

- **Businesses:** Nonessential services are closed to the public. Gun stores remain open.

- **Quarantines:** Visitors from outbreak hot spots, such as the New York tri-state area, must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Florida state parks are closed. Most beaches are closed.

9. *Georgia*

- **Travel outside home:** Mandated social distancing and recommended mask-wearing outside. Older and at-risk residents can leave only for essential needs/work with limited visitors.

- **Gatherings:** 10-person limit, not applying to incidental or transitory groups of people going by each other.

- **Businesses:** Nonessential businesses and other entities may not permit gatherings at their premises.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-in allowed with capacity limits, sanitation requirements and dozens of other precautionary measures.

- **Beaches/parks:** Open, with social distancing.

10. *Hawaii*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work. Essential services must implement separate operating hours for high-risk populations.

- **Quarantines:** Travelers from out of state must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Most state parks and public beaches are closed. All camping and lodging at parks is suspended.

11. *Idaho*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nonessential gatherings are prohibited. Visits to hospitals, nursing homes and residential-care facilities are restricted.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work. Drive-in theaters and churches are permitted.

- **Quarantines:** Persons entering the state of Idaho are required to self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No camping in state parks.

*12. Illinois*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks, fish and wildlife areas, recreational areas and historic sites are closed.

*13. Indiana*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Hiking, biking, fishing, boating, birding, hunting and camping are allowed with social distancing.

*14. Iowa*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** Limited to 10 people.

- **Businesses:** Nonessential retail businesses are closed.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Parks remain open. Campgrounds are closed.

*15. Kansas*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit, exempting funerals and religious services with social distancing.

- **Businesses:** Residents may not leave home to patronize nonessential businesses, such as hair salons.

- **Quarantines:** Kansas residents who traveled to California, Florida, New York or Washington state after March 14—or visited Illinois or New Jersey after March 22—must self-quarantine for 14 days. The same applies to anybody who had close contact with a Covid-19 patient.

- **Bars/restaurants:** Dine-out or curbside service only.

- **Beaches/parks:** Most parks are open.

*16. Kentucky*

- **Travel outside home:** Travel outside the state is restricted to essential needs/work.

- **Gatherings:** Mass gatherings prohibited; smaller gatherings are allowed with social distancing.

- **Businesses:** Nonessential retail must close.

- **Quarantines:** Anybody coming in from out of state—including residents—must self-quarantine for 14 days upon return.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks closed for overnight stays.

*17. Louisiana*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Some state parks are open for fishing, hiking and biking during the day.

*18. Maine*

- **Travel outside home:** Only for essential needs/work. No use of public transportation unless absolutely necessary. .

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Travelers arriving in Maine, regardless of their state of residency, must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Numerous parks and beaches closed.

*19. Maryland*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work. Senior-citizen activities centers are closed.

- **Quarantines:** People traveling into Maryland from anywhere outside Maryland are required to self-quarantine for 14 days with limited exceptions. (Guidance)

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State park beaches are closed. Some parks remain open.

20. *Massachusetts*

- **Travel outside home:** People and especially older adults are strongly advised to stay home as much as possible. (Advisory)

- **Gatherings:** 10-person limit. Applies to confined spaces, not parks and other outdoor spaces.

- **Businesses:** Nonessential businesses must close their physical workplaces and facilities to workers and customers. Groceries must reserve an hour in the morning for older customers.

- **Quarantines:** Arriving travelers from out of state are instructed to self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No congregating on coastal beaches. State parks are open and campgrounds closed.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are open, but campgrounds, overnight lodging facilities and shelters are closed.

21. *Minnesota*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** No statewide directive.

- **Businesses:** Entertainment and performance venues are closed.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Wildlife management areas, state forests and state parks remain open. Campgrounds are closed.

22. *Mississippi*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are open for fishing. Beaches can re-open with social distancing.

*23. Missouri*

- **Travel outside home:**

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses must enforce social distancing. Essential retailers must limit occupancy.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks and trails are open during the day.

*24. Montana*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nonessential social and recreational gatherings are prohibited, if social distancing ca not be maintained.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Nonwork travelers from out of state must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Open with social distancing.

*25. Nebraska*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** 10-person limit.

- **Businesses:** No statewide directive.

- **Quarantines:** No statewide travel quarantine. Mandatory quarantines required for Covid-19 patients and households.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No overnight camping at state parks, state recreation areas and wildlife management areas.

*26. Nevada*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** People may not congregate in groups of 10 or more.

- **Businesses:** Recreational, entertainment and personal-care businesses are closed, including casinos.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks in the greater Las Vegas area, including Valley of Fire and Rye Patch are closed. Other state parks remain open for day-use only.

*27. New Hampshire*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nine-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only

- **Beaches/parks:** Most park sites are open.

*28. New Jersey*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential retail businesses must close bricks-and-mortar premises. Recreational and entertainment businesses are closed to the public.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Some local beach closures. All state parks and forests are closed to the public.

*29. New Mexico*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit in a single room or connected space outside residence.

- **Businesses:** Nonessential businesses must suspend all in-person operations.

- **Quarantines:** Arriving air travelers must self-quarantine for two weeks.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are closed.

*30. New York*

- **Travel outside home:** Only for essential needs/work. Individuals age 70 and older and those with compromised immune systems must stay home and limit home-visitation to immediate family members or close friends.

- **Gatherings:** Nonessential gatherings are prohibited.

- **Businesses:** Nonessential businesses limited to minimum operations or remote work. (Guidance)

- **Quarantines:** No mandatory quarantine for out-of-state travelers. Mandatory quarantines for people who have been in close contact with a Covid-19 patient.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Social distancing at state parks.

*31. North Carolina*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** People may go to public parks and outdoor recreation areas unless locally restricted.

*32. North Dakota*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** No statewide directive.

- **Businesses:** Personal-care services and recreational facilities are closed.

- **Quarantines:** Mandatory quarantine for residents returning from abroad or domestic travelers returning from a state with widespread community infection.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks are open for day-use only.

*33. Ohio*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Nonessential businesses and operations must cease all activities except minimum basic operations.

- **Quarantines:** Travelers arriving in Ohio should self-quarantine for 14 days with limited exceptions.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Wildlife areas, forests and nature preserves remain open.

*34. Oklahoma*

- **Travel outside home:** Vulnerable individuals (older residents and those with underlying medical problems) are directed to stay home except when running essential errands or commuting to critical infrastructure jobs.

- **Gatherings:** 10-person limit. No visitors at nursing homes, retirement or long-term care facilities.

- **Businesses:** Nonessential businesses must suspend services.

- **Quarantines:** Arriving travelers from the New York tri-state area, California, Louisiana and Washington should self-quarantine for 14 days with limited exceptions.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Hiking trails, picnic tables, fishing areas and boat ramps are available for outdoor recreation.

35. *Oregon*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings over 25 people are canceled statewide. Oregonians are urged to avoid gatherings of 10 people.

- **Businesses:** Nonessential business closures.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No daytime or overnight visitors are permitted at any state park.

36. *Pennsylvania*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings are generally prohibited.

- **Businesses:** Non-life-sustaining businesses must close or operate remotely.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Trails, lakes, roads and parking are limited to "passive and dispersed recreation."

37. *Rhode Island*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit.

- **Businesses:** Noncritical retail businesses must cease operations.

- **Quarantines:** Mandatory two-week quarantine for out-of-state visitors.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State beaches and parks are closed.

*38. South Carolina*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Gatherings of three or more are prohibited if deemed a threat to public health.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Public beaches and access points to lakes, rivers and waterways are closed. Local restrictions on parks.

*39. South Dakota*

- **Travel outside home:** The governor has not issued a stay-at-home order.

- **Gatherings:** Unnecessary gatherings of 10 or more prohibited.

- **Businesses:** No statewide directive.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** No statewide directive.

- **Beaches/parks:** No statewide directive.

*40. Tennessee*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Social gatherings of 10 or more people prohibited.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Most state parks have reopened for day-use only.

41. *Texas*

- **Travel outside home:** Texans must minimize in-person contact with people who are not in the same household. (A number of major counties have more explicit stay-at-home orders.) No visits to nursing homes or long-term care facilities unless providing critical assistance.

- **Gatherings:** 10-person limit.

- **Businesses:** No eating or drinking at bars and restaurants or visits to gyms, massage establishments, tattoo studios, piercing studios and cosmetology salons.

- **Quarantines:** Air travelers flying to Texas from New York, New Jersey, Connecticut, California, Louisiana or Washington—or Atlanta, Chicago, Detroit, Miami—must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Many state parks remain open. Some beaches are closed or limited to restricted activities.

42. *Utah*

- **Travel outside home:** High-risk individuals (older residents and those with serious underlying medical conditions) may leave only for essential needs/work. Others must stay home whenever possible.

- **Gatherings:** 10-person limit recommended.

- **Businesses:** Businesses must minimize face-to-face contact with high-risk employees.

- **Quarantines:** Two-week quarantine after traveling out of state or exposed to a person with Covid-19 symptoms.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks open to all visitors, except parks under local health order restrictions.

*43. Vermont*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Nonessential gatherings are limited to 10 people.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Visitors must self-quarantine for two weeks unless traveling for an essential purpose.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** RV parks and campgrounds are closed with emergency shelter exceptions

*44. Virginia*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** 10-person limit.

- **Businesses:** Recreation and entertainment businesses must close.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Beaches are closed except for fishing and exercising. State parks are open for day-use activities. Campgrounds are closed.

*45. Washington*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** All gatherings of people for social, spiritual and recreational purposes are prohibited.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No statewide directive.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** State parks and recreational fisheries are closed.

46. *West Virginia*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** Five-person limit with some exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** Two-week mandatory quarantines for people traveling into West Virginia from areas of substantial community spread of Covid-19.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Park lodges, cabins and campgrounds are closed.

47. *Wisconsin*

- **Travel outside home:** Only for essential needs/work.

- **Gatherings:** All public and private gatherings are prohibited with limited exceptions.

- **Businesses:** Nonessential businesses are limited to minimum operations or remote work.

- **Quarantines:** No mandatory quarantine for out-of-state travelers. Self-quarantine recommended for out-of-state travelers.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** Many state parks are closed.  Campgrounds are closed.

48. *Wyoming*

- **Travel outside home:** Residents urged but not required to stay home whenever possible.

- **Gatherings:** Limited to nine people.

- **Businesses:** Theaters, bars, museums, gyms, nightclubs and other public places are closed.

- **Quarantines:** People traveling to Wyoming for nonwork purposes must self-quarantine for 14 days.

- **Bars/restaurants:** Dine-out only.

- **Beaches/parks:** No statewide directive.

## CLASS ALLEGATIONS

42.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) on

behalf of the following Class:

> All insured of Defendants who have suffered business interruption
> and lost income as a result of Civil Authority Orders issued in
> response to the COVID-19 pandemic.

43.     Upon information and belief, Defendants do not cover business interruption

services for all fitness centers in contravention to the uniform language contained in the insurance

policies it has issued.

44.     The exact number of the Class members is unknown as such information is in

exclusive control of Defendants. However, due to the nature and commerce involved, Plaintiffs

believe the Class consists of hundreds of insureds nationwide, making joinder of the Class

members impractical.

45.     Common questions of law and fact affect the right of each Class member. Plaintiffs

are seeking Declaratory Relief for all Class members who run businesses with similar polices to

Plaintiffs. Declaratory relief will permit adjudication of the rights of all parties as to whether

Defendants' policies provide coverage for business interruptions losses the Class has suffered as a

result of Civil Authority Orders.

46.     Common questions of law and fact that affect the Class members include, but are

not limited to:

a.  Whether Defendants were legally obligated to pay for business interruption as a result
    of Civil Authority Orders issued in response to the COVID-19 pandemic;

b.  Whether Plaintiffs and Class members have suffered "property damages" in accordance
    with the terms and conditions of Defendants business interruption insurance policies;

c.  Whether Plaintiffs and Class members are excluded from coverage for losses they suffered due to the Civil Authority Orders as a result of the Virus or Bacterial exclusions contained in Defendants' insurance policies; and

d.  Whether Defendants are justified in denying Plaintiffs and Class members' claims.

47.  The claims and defenses of Plaintiffs, as representative plaintiffs, are typical of the claims and defenses of the Class because Defendants wrongfully denied that its policy covers claims to Plaintiffs and the Class members.

48.  Plaintiffs, as representative plaintiffs, will fairly and adequately assert and protect the interests of the Class.

a.  Plaintiffs have hired attorneys who are experienced in prosecuting class actions and will adequately represent the interests of the Class; and

b.  Plaintiffs have no conflict of interest that will interfere with the maintenance of a class action.

49.  A class action provides a fair and efficient method for adjudication of the controversy for the following reasons:

a.  Prosecution of separate actions by individual Class members would create a risk of inconsistent and varying results against Defendants when confronted with incompatible standards of conduct; and

b.  Adjudications with respect to individual Class members could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications and substantially impair their ability to protect their interests.

50.  Defendants have taken steps to discourage the Class from submitting claims under their policies.   For this reason, Declaratory relief for the entire class is appropriate and necessary.

## V.  Impact on Plaintiffs

51.  As a result of the Civil Authority Orders referenced herein, Plaintiffs were required to shut their doors and cease operation of their fitness centers.

52.     Plaintiffs' business losses occurred when the State of Arizona issued its March 17, 2020 order discouraging all gatherings above 10 people.  Plaintiffs' businesses were required to close on April 1, 2020.

53.     Prior to April 1, 2020, Plaintiffs were open. Plaintiffs' fitness centers are not a closed environment, people – staff, customers, community members, and others – constantly cycle in and out of the centers.  Accordingly, there is an ever-present risk that the Insured Properties are contaminated and would continue to be contaminated.

54.     Businesses like the Plaintiffs are also more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Insured Properties and remain viable for far longer as compared to a facility with open-air ventilation.

55.     Plaintiffs' businesses are also highly susceptible to rapid person-to-property transmission of the COVID-19 virus, and vice-versa, because the service nature of the business places staff and customers in close proximity to business  property and to one another, and because the nature of the activities taking place at the schools and shops, results in high levels of respiratory droplets and fomites being released into the business property's air.

56.     The COVID-19 virus is physically impacting Plaintiffs. Any effort by the Defendants to deny the reality that the COVID-19 virus has caused Plaintiffs physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger Plaintiffs and the public.

57.     A declaratory judgment determining that the coverage provided under the Policy exists is necessary so as to prevent the Plaintiffs and the class from being left without bargained-for insurance coverage required to ensure the survival of their fitness centers during and after the shutdown caused by the Civil Authority Orders.  As a result of these Orders, Plaintiffs and the

class have incurred, and continue to incur, among other things, a substantial loss of business income and additional expenses, which losses are covered under the terms of the Policies.

## CAUSE OF ACTION

## DECLARATORY RELIEF

58.     Plaintiffs re-allege and incorporate by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

59.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

60.     An actual controversy has arisen between Plaintiffs and the Defendants as to the rights, duties, responsibilities and obligations of the parties under the terms of the Policy in that Plaintiffs contends and, on information and belief, the Defendants dispute and deny, that:

a.  The Civil Authority Orders constitute a prohibition of access to Plaintiffs' Insured Properties;

b.  The prohibition of access by the Orders has specifically prohibited access as defined in the Policy;

c.  The Policy's Exclusion of Loss Due to Virus or Bacteria does not apply to the business losses incurred by Plaintiffs here that are proximately caused by the Civil Authority Orders issued in response to the COVID-19 pandemic;

d.  The Civil Authority Orders trigger coverage under the terms of the Policy;

e.  The Policy provides coverage to Plaintiffs for any current and future civil authority closures of their businesses in Arizona due to physical loss or damage directly or indirectly from the COVID-19 pandemic under the Civil Authority coverage parameters;

f.  The Policy provides business income coverage in the event that the COVID-19 pandemic has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Insured Properties; and

g.  Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

61.     Plaintiffs seek a Declaratory Judgment to determine whether the Civil Authority Orders constitute a prohibition of access to Plaintiffs' Insured Properties as defined in the Policy.

62.     Plaintiffs further seek a Declaratory Judgment to affirm that the Civil Authority Orders triggers coverage.

63.     Plaintiffs further seek a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiffs and the class for any current and future loss of Business Income sustained and any Extra Expense incurred as a result of Civil Authority orders requiring closures of their insured business properties nationwide due to physical loss or damage caused by the COVID-19 pandemic.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs herein pray as follows:

a.  For a declaration that the Civil Authority Orders constitute a prohibition of access to Plaintiffs' Insured Properties.

b.  To certify the class under Rule 23(b)(2).

c.  To direct notice to the class.

d.  For a declaration that the prohibition of access by Orders of the Civil Authorities constitutes the type of prohibited access as defined in the Policy.

e.  For a declaration that the Civil Authority Orders trigger coverage under the terms of the Policy.

f.  For a declaration that the Policy provides coverage to Plaintiffs for any current, future and continued Civil Authority closures of their businesses in Arizona due to physical loss or damage directly or indirectly from the COVID-19 under the Policy's Civil Authority coverage parameters.

g.  For a declaration that the Policy provides business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the Plaintiffs' Insured Properties or the immediate area of the Plaintiffs' Insured Properties.

h.  For such other relief as the Court may deem proper.

### <u>TRIAL BY JURY IS DEMANDED</u>

Plaintiffs hereby demand trial by jury.


Dated: May 19, 2020                                    Respectfully submitted,


*/s/ Daniel C. Levin*
Arnold Levin, Esq.
Laurence Berman, Esq.
Frederick Longer, Esq.
Daniel Levin, Esq.
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
alevin@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com

Richard M. Golomb, Esq.
Kenneth J. Grunfeld, Esq.
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Telephone: (215) 985-9177
Facsimile: (215) 985-4169
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

Aaron Rihn, Esq.
**ROBERT PEIRCE & ASSOCIATES**
707 Grant Street, Suite 125
Pittsburgh, PA 15219
Telephone: (412) 281-7229
Facsimile: (412) 281-4229

W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, AL 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Counsel for Plaintiffs*